IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CASTRO BUSINESS ENTERPRISES, INC.

    Plaintiff,

v.

ARIEL MEDINA SANTIAGO, et al.

    Defendants.

Civil No. 11-1486 (SEC)

**OPINION AND ORDER**

Before the Court are defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Docket #26), and plaintiff's opposition thereto (Docket # 35). After reviewing the filings and the applicable law, defendants' motion is **GRANTED** in part and **DENIED** in part.

**Background**

This federal question suit stems from the alleged wrongful execution of a state court judgment. Plaintiff is Castro Business Enterprises, Inc. ("CBE"), a business entity duly incorporated in Puerto Rico, and its claims are predicated on the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution as well as under the laws of the Commonwealth of Puerto Rico. Defendants are the San Juan Judicial Court Marshal who executed the judgment, Jesus M. Marrero-Oyola, and his supervisor, the Chief Marshal of the Commonwealth of Puerto Rico, Julio Jurado-Valentin.[1] They are sued in both their personal and official capacities.

The allegations in CBE's complaint are straightforward. In 2009, the Court of First Instance in San Juan issued a $43,000 judgment against several individuals and the corporations Meat, Inc., and Castro Cash & Carry. The same court ordered the seizure of

---

[1] Ariel Medina-Santiago, the person for whom the judgment was rendered, is also a named defendant, but because he failed to appear, default was entered against him. Docket # 33.

property in execution of judgment in January 2010. The execution went awry, however.

In May 2010, Marrero-Oyola visited CBE to execute the judgment.[2] There, he was told that CBE was not a party to the state court proceedings, that it was a different corporate entity than those involved there, and therefore, that it was not included in the state court order. Marrero-Oyola was also presented with documents showing that CBE was in fact an entity duly incorporated and authorized to do business in Puerto Rico and informed that the property being seized belonged to CBE. He nonetheless continued undeterred, seizing $45,141 worth of CBE's property.[3]

In August 2010, prompted by CBE, the state court ordered the consignment of the property seized. A failed appeal followed, the consignation order becoming firm and final thereafter. CBE's property, however, was never consigned, and this suit ensued on May 24, 2011. Here, after preliminary procedural nuances, Defendants moved to dismiss, arguing that (1) the complaint fails to properly allege a constitutional violation; and (2) the Eleventh Amendment as well as the absolute and qualified immunity doctrines bar this suit. CBE opposed each of these contentions.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must

---

[2] None of the submissions before the Court explain whether CBE has any relationship with the state court defendants.

[3] The only allegations against Jurado-Valentin are the following:

> Defendant Jurado, allowed the continuance of the wrongful seizure or attachment in violation of Plaintiff's civil rights; was grossly negligent in supervising subordinates who committed the wrongful acts; and exhibited deliberated indifferent to others' rights by failing to act on information which clearly indicated that unconstitutional acts were occurring.

Docket # 1, ¶ 20.

possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008). In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiff's favor. Twombly, 550 U.S. 544. The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. Nevertheless, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Moreover, "even under the liberal pleading standards of Fed R. Civ. P. 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Twombly, 550 U.S. at 559 (cited in Rodriguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007)). Although complaints do not need detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Twombly, 550 U.S. at 556.

In Iqbal, 556 U.S. 662, the Supreme Court reaffirmed Twombly and clarified that two

4

underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id., at 677-679. Specifically, the court is not compelled to accept legal conclusions set forth as factual allegations in the complaint. Id. Further, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1,12 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. Twombly, 550 U.S. at 556. Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. Id. Plausibility is therefore a context-specific determination that requires the court to draw on its judicial experience and common sense. Id.

**Applicable Law and Analysis**

*I. Claims under the U.S. Constitution*

The Court's analysis begins with 42 U.S.C. § 1983, which is the statutory predicate for the vindication of federal rights elsewhere conferred. See e.g., Graham v. Connor, 490 U.S. 386, 393-94 (1989). To prove liability under § 1983, a "plaintiff[] must show by a

5

preponderance of the evidence that (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-52 (1st Cir. 2006). Moreover, under § 1983, government officials may only "be held liable if the plaintiff can establish [a] constitutional injury result[ing] from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Rodriguez-Garcia v. Municipality of Caguas, 495 F.3d 1, 10 (1st Cir. 2007) (internal quotation marks omitted). A plaintiff must therefore link each individual defendant to the alleged violation of federal rights. Gonzalez-Piña v. Rodriguez, 407 F.3d 425, 432 (1st Cir. 2005). In other words, each defendant responds for his own acts or omissions in light of his duties; there is no liability on the basis of *respondeat superior*. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91-92 (1st Cir. 1994); Rizzo v. Goode, 423 U.S. 362, 375-77 (1976). Furthermore, the actionable conduct must be intentional, grossly negligent, or with reckless or callous indifference to established constitutional rights. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986).

CBE's complaint satisfies the first prong of the § 1983 analysis, as the decisions at issue in this case were taken under color of state law. Defendants do not dispute this point. Rather they contend, first, that CBE's complaint fails to establish the requisite causal connection between the events in dispute and Jurado-Valentin. A cursory review of the complaint proves Defendants right. The only allegations against Jurado-Valentin, those quoted in footnote No. 3 above, are conclusory in nature and must be disregarded. See Iqbal, 556 U.S. at 677-79 (stating that conclusory allegations are discarded at motion to dismiss stage).[4] Plaintiffs fail to address this point. Their opposition memoranda contains a two-page

---

[4] Indeed, those allegations nowhere state whether Jurado-Valentin had direct or tacit involvement in the events at issue.

6

recitation of the legal standard applicable to a § 1983 supervisory liability claim accompanied by no legal discussion or argumentation. See Docket # 35, pgs. 15 and 16. Such a lackadaisical effort is insufficient: "issues adverted to in a perfunctory manner, unaccompanied by some effort at development argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). For these reasons, Defendants' motion to dismiss all § 1983 claims against Jurado-Valentin is **GRANTED**.

The § 1983 claims against Marrero-Oyola are a different story. On this front, Defendants argue that CBE put forth no factual allegations to allow the conclusion that Marrero-Oyola acted with reckless or deliberate indifference toward constitutional rights. Defendants' argument, however, can be discarded out of hand. The complaint unequivocally alleges that (1) CBE showed evidence to Marrero-Oyola proving that it was neither a party to the state proceeding nor was included in the execution of the judgment order; (2) CBE appraised Marrero-Oyola that the property being seized belonged to it; and (3) Marrero-Oyola seized CBE's property anyway. At this stage, where all factual allegations must be credited, nothing more is needed to pass muster under the Fourth and the Fourteenth Amendments of the U.S. Constitution. See e.g., Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990) (stating that under the Fourteenth Amendment, "before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner"); see also Soldan v. Cook County, Ill., 506 U.S. 56, 62-63, 71 (1992) (stating that property rights are protected under the Fourth Amendment against unreasonable seizures: "'reasonableness' being the ultimate standard under the Amendment"). Put differently, a cursory review of CBE's complaint reveals proper factual allegations to infer that property rights were abridged without the required process as well as to call into question the reasonableness of the seizure at issue. Accordingly, Defendants' motion is **DENIED** in this regard. Whether Marrero-Oyola acted with reckless or deliberate indifference toward CBE's

constitutional rights is a factual inquiry better left for the future.

Defendants' contentions as to CBE's Fifth Amendment claims stand on much stronger footing. In this regard, they correctly rely on Public Utilities Commission v. Pollack, 343 U.S. 451, 462-64 (1983), which stands for the proposition that the Fifth Amendment applies to actions of the federal government, not those of private individuals, nor of state government. See also Gerena v. Puerto Rico Legal Services, 697 F.2d 447, 449 (1st Cir. 1983). CBE seeks relief against two employees of the Commonwealth of Puerto Rico without addressing the foregoing case law. The Court is therefore in no position to provide the relief requested; Defendants' motion to dismiss CBS's Fifth Amendment claims is **GRANTED** for that reason.

*II. Eleventh Amendment Immunity*

An elaborated discussion is also unnecessary here. CBE concedes that the Eleventh Amendment forecloses its official capacity claims against Defendants. Docket # 35, pgs. 17-18; see also Smith v. Reeves, 178 U.S. 438, 438-39 (1900) (holding that the Eleventh Amendment protects state officials in their official capacities). CBE nonetheless points out that Defendants were also sued in their personal capacities and that Ex Parte Young, 209 U.S. 123, 155-55 (1908) provides for the prospective equitable relief being sought. Docket # 35, 17-18. CBE is correct at both ends, and Defendants' submission contains nothing to the contrary. Accordingly, Defendants' motion to dismiss CBE's official capacity claims is **GRANTED**, but its personal capacity claims and the prospective equitable relief requested are unabated by the Eleventh Amendment.

*III. Absolute Immunity*

Next, Defendants resort to the absolute immunity doctrine in an attempt to curb CBE's claims. This doctrine was crafted to protect the authorized performance of "'paradigmatic judicial acts'—acts which entail discretionary decision-making in resolving disputes or

8

adjudicating private rights." Forrester v. White, 484 U.S. 219, 227 (1988). It is founded on the notion "that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." Antoine v. Byers & Anderson, 508 U.S. 429, 435 (1993). For this reason, the scope of applicability for the doctrine is limited: "the touchstone for the doctrine applicability has been performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." Id. (internal quotation marks omitted).

Defendants acknowledge the narrow reach of the absolute immunity doctrine. Nevertheless, they invite the Court to decide "whether this immunity is to be extended to Judicial Marshals, Courtroom Marshals, Bailiffs or similar court officers." Docket # 26, p 18. As Defendants see things, a "marshal's role in assuring the execution of a judgment issued by a sitting judge, is so intimately associated with the judicial phase of the process, as to warrant absolute immunity protection." Id. Further, they argue that "the marshal's role in executing the judgment and ensuring compliance with the same, is nothing less than an extension of a judge's role in issuing that judgment." Id.

The path Defendants want to steer the Court onto is by no means unchartered. In fact, Lockhart v. Hoenstine, 411 F.2d 455, 460 (3rd Cir. 1969), a four-decade-old case, provides a terse explanation for the rational behind the immunity Defendants seek:

> There are compelling reasons for continued recognition of this rule of immunity. In addition to the traditional arguments advanced in favor of general immunity for public officers, i.e. the danger of influencing public officials by threat of suit, the deterrent effect of potential liability, the drain on time caused by frivolous suits, we must also be cognizant of the manifest unfairness of subjecting one to suit as a consequence of action taken at the direction of officials over whom the individual actor has no power or control.

The problem with Defendants' argument, however, is that CBE alleges that the actions at issue in this case fell outside the scope of the court order. Specifically, CBE's complaint states that the court order neither included CBE nor authorized the course of action Marrero-

Oyola took against it. Under such scenario, no incantation of the immunity doctrine would afford Defendants the relief requested. Cf., Torres-Ramirez v. Bermudez-Garcia, 898 F.2d 224, 228 (1st Cir. 1990) (absolute immunity denied for actions taken pursuant to a vacated warrant). Therefore, their motion to dismiss on absolute immunity grounds is **DENIED**.

*IV. Qualified Immunity*

Defendants' motion to dismiss contains a lengthy exposition about the qualified immunity doctrine, which, in essence, protects public employees from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 547 U.S. 800, 818 (1982). Defendants' discussion is anchored on the proposition "that the actions undertaken by the defendants were done pursuant to a valid court order issued to seize property in assurance of the judgment in a state court action." Docket # 26, 13. But the flaw in such proposition should be obvious by now: CBE's complaint properly alleges that Marrero-Oyola acted outside the scope of the court order when seizing CBE's property. Thus, the Court need no go further at this stage, and Defendants' motion to dismiss on qualified immunity grounds is **DENIED**.

*V. Supplemental State-Law Claims*

Similarly, because Defendants' plea for the dismissal of CBE's state-law claims assumes the dismissal of all federal-law claims, the Court need not address the same.

_____

**Conclusion**

The tally of the preceding discussion is the following: CBE's § 1983 claims against Jurado-Valentin as well as its Fifth Amendment and official capacity claims against Defendants are **DISMISSED with prejudice**; CBE's personal capacity claims under the Fourth and Fourteenth Amendments against Marrero-Oyola as well as those claims based on equity and state law against Defendants withstand Rule 12(b)(6) scrutiny.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of April, 2012.

*s/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge